**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHAEL SWIHART,**

    Petitioner,

    v.

**RHONDA R. RICHARD, et al.,**

    Respondents.

**Case No. 2:16-cv-158
Judge George C. Smith
Magistrate Judge Kimberly A. Jolson**

**REPORT AND RECOMMENDATION
AND ORDER**

Petitioner, a state prisoner, brings the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition (Doc. 1), Respondent's Return of Writ (Doc. 5), Petitioner's Reply (Doc. 8), and the exhibits of the parties. Also before the Court is Petitioner's Motion for Discovery (Doc. 9). For the following reasons, Petitioner's Motion for Discovery is **DENIED**, and the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**I.  FACTS AND PROCEDURAL HISTORY**

This case involves Petitioner's underlying 1978 conviction in the Medina County Court of Common Pleas on one count of aggravated murder, two counts of murder, and one count of aggravated arson. (Doc. 1 at 1). Although Petitioner was sentenced to death initially, his death sentence was commuted to life with the possibility of parole after fifteen years. (*See* Doc. 5-1, PAGEID #: 821–22 (modifying Petitioner's death sentence to life imprisonment based on *Ohio v. Lockett*)).

In March 1992, Petitioner sought to participate in the Furlough Program, requesting an appearance before the Parole Board for consideration. (*Id.*, PAGEID #: 848). Following a hearing, Petitioner was denied furlough. (*Id.*, PAGEID #: 850, 853). Then, consistent with his sentence, Petitioner had his first parole hearing after he had served fifteen years. The Parole Board determined that Petitioner was unsuitable for parole due to the serious nature of the crime. (*Id.*, PAGEID #: 872).

Petitioner's next parole hearing was scheduled for 2002. (*Id.*). Prior to his 2002 hearing, however, the Ohio General Assembly implemented new parole guidelines in 1998. The new guidelines included a determination that a prisoner with Petitioner's characteristics should serve 300 months, or 25 years, before being considered for parole. *See Swihart v. Wilkinson*, 209 F. App'x 456, 457 (6th Cir. 2006). At Petitioner's next parole hearing, the Parole Board noted that Petitioner had served 299 months and determined that he was unsuitable for parole. (Doc. 5-1, PAGEID #: 884–86). More specifically, the hearing panel voted "to continue offender into his guideline range of 300 months-life, based on the offender's offense behavior involving the death of his mother, father, and two brothers, and in deference to the court's sentence of death which was later commuted to life." (*Id.*, PAGEID #: 886). Petitioner's next parole hearing was scheduled for 2007. (*Id.*).

  A.  **Mr. Swihart's 42 U.S.C. § 1983 Case:** *Swihart v. Wilkinson*, **Case No. C2-04-893**

In 2004, Petitioner filed a *pro se* complaint in this Court pursuant to 42 U.S.C. § 1983 against Reginald Wilkinson, Director of the Ohio Department of Rehabilitation and Correction (the "ODRC"); Margarette T. Ghee, former Chairperson of the Ohio Adult Parole Authority ("OAPA"); Gary Croft, then-current Chairperson of the OAPA; and all former and current members of the OAPA from 1990 forward who allegedly violated his substantive and procedural

2

due process rights by retroactively applying parole eligibility guidelines which denied him parole or furlough eligibility. (*Swihart v. Wilkinson*, No. C2-04-893, Doc. 1). Petitioner's claims are summarized as follows:

> Swihart asserted that the OAPA has expressed its intention never to grant him parole due to the fact he was originally sentenced to death. He argued that such a blanket denial violated the Privileges and Immunities Clause, the Eighth Amendment's prohibition of cruel and unusual punishment, and due process. In addition, Swihart alleged that amendments to both the parole guidelines and an administrative regulation authorizing prisoner furloughs were applied to his sentence in violation of the Ex Post Facto Clause. He sought declaratory and injunctive relief, as well as monetary damages.

*Swihart*, 209 F. App'x at 457–58. Thus, Petitioner claimed that the denial of parole and furlough violated his due process rights as well as other constitutional rights because his hearings were meaningless. *See id*.

Magistrate Judge Mark R. Abel determined, *inter alia*, that the OAPA acted within its discretion. (Case No. C2-04-893, Doc. 18 at 8). Magistrate Judge Abel stated that, although Petitioner questioned the OAPA's reliance on his original sentence of death, "due process does not forbid the board from considering the death penalty originally imposed by a three-judge panel as a gauge to the serious nature of the offenses committed." (*Id*.). Magistrate Judge Abel noted that Petitioner confessed in writing to killing his parents and two brothers with a baseball bat, lighting the house on fire, and fleeing the scene. (*Id*., n.3). Thus, Magistrate Judge Abel explained that Petitioner's conduct did not cause the Court to conclude the death penalty was unwarranted; instead, the death penalty was set aside based on the United States Supreme Court's determination that Ohio's death penalty statute was unconstitutional. (*Id*. at 8 (citing *Lockett*, 438 U.S. at 586)). Magistrate Judge Abel recommended that Petitioner's due process claims, as well as his other claims, be dismissed. (*Id*. at 10).

Petitioner objected to Magistrate Judge Abel's Report and Recommendation. (Case No. C2-04-893, Doc. 23). District Judge George C. Smith overruled his objection, finding that the OAPA properly considered that Petitioner's crime involved the death of family and his original sentence of the death penalty, which was commuted later to life in prison. (Case No. C2-04-893, Doc. 27 at 7). Thus, Judge Smith agreed with Magistrate Judge Abel's determination that the OAPA considered Petitioner individually and exercised its discretion in rendering its decision. (*Id.*). In 2006, the United States Court of Appeals for the Sixth Circuit affirmed Judge Smith's decision. *See Swihart*, 209 F. App'x at 460.

### B. Mr. Swihart's Third and Fourth Parole Hearings

Meanwhile, in 2005, Petitioner received consideration by the Parole Board based upon his status as a Category 1 inmate under *Ankrom v. Hageman*, Case No. 01CVH02-1563 (Franklin Cty.). (Doc. 1-2, PAGEID #: 249–51 (noting that Petitioner received an "*Ankrom* hearing based upon the fact that [he] had served less time at the last hearing than the minimum of the suggested guideline range")). Again, the Parole Board continued the hearing until 2007. (*Id.*, PAGEID #: 251). In the decision, the Hearing Officer noted that Petitioner "was given mercy by the Supreme Court decision to commute the Death Sentence" and it was his position that Petitioner "remain incarcerated for his entire natural life for this most heinous crime." (*Id.*).

In 2007, Petitioner again was denied parole based on the severity of his crimes. (Doc. 5-3, PAGEID #: 1821–23) (stating that "to release [Petitioner] at this juncture would demean the seriousness of these crimes"). Petitioner's next hearing was set for 2012. (*Id.*, PAGEID #: 1823).

4

    **C.    Mr. Swihart's Franklin County Court of Common Pleas Case: *Swihart v. Ohio Adult Parole Authority, et al.*, Case No. 07 CVH 02-2229**

Petitioner filed a complaint in the Franklin County Court of Pleas on February 15, 2007, alleging, *inter alia*, that the Defendants had, in effect, unilaterally modified his sentence from 15 years-to-life to life without the possibility of parole by conducting "sham" parole hearings in which Defendants denied him meaningful consideration. (*Swihart v. Chairman/Chairperson of the Ohio Adult Parole Auth., et al.*, Case No. 07 CVH 02-2229). In a decision issued on February 28, 2013, Franklin County Court of Common Pleas Judge Timothy S. Horton concluded that Petitioner received meaningful consideration at his 2007 parole hearing, which rendered his claim concerning the 2005 proceedings moot. (*Swihart*, Case No. 07 CVH 02-2229, Feb. 28, 2013 decision at 4–10). Following an appeal and numerous rounds of summary judgment briefing, the Court granted the Defendants' third motion for summary judgment and dismissed Petitioner's claims with prejudice. (*Id.*, Oct. 28, 2013 decision at 5).

    **D.    Mr. Swihart's Fifth Parole Hearing**

Petitioner had his fifth parole hearing in 2012. Although one Parole Board member found Petitioner suitable for release (Doc. 5-3, PAGEID #: 2070), the majority of the Parole Board found "[t]here is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society." (*Id.*, PAGEID #: 1891). The majority likewise offered the following rationale:

> Inmate's case is aggravated by the case-specific factors of violence, multiple deaths, the ages of the victims, and trying to cover-up the crimes by arson. The inmate has completed some relevant institutional programs, vocational programming, earned a college degree and he has engaged in spiritual

5

>programming with his pastor for the past 30+ years. He also has excellent institutional conduct and community and family support. But, the aggravating factors in this case lead the Board to conclude that release would demean the seriousness of the offenses and not further the interest of justice. After weighing relevant factors, the Board does not consider the Inmate suitable for release at this time and assesses a five year continuance.

Thus, Petitioner's next parole hearing will occur in August 2017. (*Id.*).

### E. Mr. Swihart's State Court Appeal: *Swihart v. Ohio Adult Parole Authority, et al.*, Case No. 13AP-993

Petitioner appealed Judge Horton's dismissal of his state court case. *See Swihart v. Ohio Adult Parole Auth., et al.*, No. 13AP-993, 2014 WL 3740418 (Ohio Ct. App. July 29, 2014). The Court of Appeals affirmed, finding that "the OAPA's decision is discretionary, and the OAPA was not required to find appellant suitable for release on parole based on allegedly positive factors where the record contains sufficient reasons weighing against his release." *Id*. at *7–10. The Supreme Court of Ohio declined review of the decision. *Swihart v. Ohio Adult Parole Auth., et al.*, 141 Ohio St.3d 1473, 1473 (2015).

### F. The Instant Case

On February 18, 2016, Petitioner filed the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting one ground for relief—that "[t]he Ohio Department of Rehabilitation and Correction and Ohio Adult Parole Authority have denied Mr. Swihart due process by failing to meaningfully consider him for parole, furlough, or lower security status." (Doc. 1 at 5). More specifically, he asserts that the ODRC and OAPA have unconstitutionally repeatedly and arbitrarily denied him meaningful consideration for release on parole, furlough, or lower security status based on improper deference to his initial and unconstitutional death sentence and inaccurate records regarding his ineligibility for release on parole. (*Id*. at 5; Doc. 1-1, PAGEID #: 17–18; Doc. 8 at 1–2). He complains that the ODRC and OAPA provided him

6

with allegedly meaningful parole hearings in 2007 only after he filed a complaint in the state trial court, and now that his complaint has been dismissed, they "are free to resume the sham hearings they conducted for more than a decade." (Doc. 1-1, PAGEID #: 28). Petitioner seeks to conduct discovery and requests an evidentiary hearing. (*See* Doc. 9).

In response, Respondent suggests Petitioner's claim is untimely but asserts that it "appears to be based on one underlying contention, that he should have been given different considerations during his parole hearings." (Doc. 5 at 10). Thus, "[r]ather than engage in a protracted and convoluted statute of limitations analysis involving Swihart's lengthy state proceedings and multiple parole hearings, Respondent, without waiving his statute of limitations defense, submits that Swihart raises non-cognizable claims." (*Id.*). Respondent likewise argues Petitioner's claims are without merit. (*Id.* at 12–13).

## II. WHETHER PETITIONER'S CLAIM IS COGNIZABLE IN FEDERAL HABEAS CORPUS

Petitioner points to a single case, *Terrell v. United States*, 564 F.3d 442 (6th Cir. 2009), to demonstrate that his claim is cognizable in habeas corpus. (Doc. 8 at 5). In *Terrell*, a federal prisoner "commenced his claim by petitioning the district court to enter an order, pursuant to 28 U.S.C. § 2241, to require the [United States Parole] Commission to give him a live in-person parole hearing," as opposed to a videoconference. *Id.* at 445. Mr. Terrell did not contend that granting him an in-person parole hearing necessarily would entitle him to early release from custody. *Id.* The Sixth Circuit considered its jurisdiction to entertain the petition *sua sponte*. Relying on *Wright v. U.S. Board of Parole*, 557 F.2d 74 (6th Cir. 1977), a case also involving a federal prisoner, the Sixth Circuit found that Mr. Terrell's challenge "was cognizable under § 2241 as a challenge to the execution of his sentence." *Id.* at 446.

The instant case is distinguishable. As an initial matter, Petitioner is a state, not a federal, prisoner. Additionally, he brought this action under § 2254, not § 2241. Thus, the Court disagrees with Petitioner's contention that *Terrell* "ends the matter" and unequivocally demonstrates that his "use of habeas in this case is proper." (Doc. 8 at 5).

Beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court "focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original). Thus, a prisoner was prohibited from seeking relief under § 1983 where the result would "necessarily imply the invalidity of [the] conviction or sentence." *Heck v. Humphey*, 512 U.S. 477, 487 (1994). In this way, the Supreme Court "developed an exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus,' i.e., where a state prisoner requests present or future release." *Dotson*, 544 U.S. at 74.

However, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court clarified that § 1983 remains available for procedural challenges where success "*would not necessarily* spell immediate or speedier release for the prisoner." *Id*. (emphasis in original). Stated differently, a prisoner is prohibited from using § 1983 to obtain relief only where success "*would necessarily* demonstrate the invalidity of confinement or its duration." *Id*. at 74–75 (emphasis in original) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Heck*, 512 U.S. at 477). Consequently, following *Dotson*, a § 1983 case attacking parole proceedings could not be dismissed on the grounds that habeas corpus is the sole remedy for such claims. *See id*.

8

Based on that precedent, Petitioner had two potential claims available to him when seeking relief for an alleged constitutional violation: he could either file a § 1983 case that would not necessarily result in his immediate or speedier release or seek a writ of habeas corpus under § 2254 that would necessarily demonstrate the invalidity of his confinement or its duration. Here, Petitioner has done both. As stated *supra*, United States District Judge George C. Smith, the same District Judge assigned to this case, has already reviewed Petitioner's § 1983 claim and dismissed it on the merits, a decision affirmed by the Sixth Circuit. (*See* Case No. C2-04-893, Doc. 27 at 7 (agreeing that the OAPA considered Petitioner individually and acted within its discretion); *Swihart*, 209 F. App'x at 460). Therefore, despite having had his day in Court concerning the alleged denial of a meaningful parole hearing, Petitioner wishes to begin anew by bringing his claim in habeas corpus, not § 1983.

With a lack of clarity in the relevant case law, Petitioner may be able to do so. *See, e.g.*, *Parsons v. Wilkinson*, No. 2:05-cv-527, 2008 WL 816710, at *5 (S.D. Ohio Mar. 26, 2008) (noting that the § 1983 plaintiff had "already challenged the state parole procedures as applied to him in a petition for habeas corpus under 28 U.S.C. § 2254 and that petition was decided on the merits"). However, there is a conceptual difficulty posed by permitting parole-related claims to proceed both in § 1983 and in habeas corpus—it grants claimants a "re-do" by allowing them to re-characterize their claim if they fail on the merits in their first case.

For example, had Petitioner initially brought a habeas claim, rather than a § 1983 claim, in *Swihart v. Wilkinson*, Case No. C2-04-893, this case would violate 28 U.S.C. § 2244(b)'s prohibition on "second or successive" petitions. *See* 28 U.S.C. § 2241(b)(1) (providing that a "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed"). Alternatively, had Petitioner attempted

9

to reassert here the § 1983 claim raised in *Swihart v. Wilkinson*, Case No. C2-04-893, it would have been barred by *res judicata* if affirmatively raised. *See, e.g.*, *Golden v. C.I.R.*, 548 F.3d 487, 494 (6th Cir. 2008) (setting forth the elements of *res judicata*). Consequently, to allow Petitioner to proceed with this habeas claim after unsuccessfully bringing a § 1983 claim rewards inartful pleading or extremely artful pleading by allowing Petitioner to have the same case heard twice. The Court is reluctant to conclude that outcome was intended by the relevant case law.

Justice Kennedy's dissenting opinion in *Dotson* highlighted the conceptual difficulties posed by allowing a prisoner to proceed in habeas or under § 1983. *Dotson*, 544 U.S. at 88. Specifically, he stated that the majority's "ruling blurs the *Preiser* formulation" and would "allow numerous § 1983 challenges to state parole system determinations that do relate solely to the duration of . . . confinement." *Id.* at 92. Justice Kennedy observed:

> The primary reason offered for the Court's holding is that an order entitling a prisoner to a new parole proceeding might not result in his early release. That reason, however, applies with equal logic and force to a sentencing proceeding. And since it is elementary that habeas is the appropriate remedy for challenging a sentence, something must be quite wrong with the Court's own first premise.
>
> Everyone knows that when a prisoner succeeds in a habeas action and obtains a new sentencing hearing, the sentence may or may not be reduced. The sentence can end up being just the same, or perhaps longer. The prisoner's early release is by no means assured simply because the first sentence was found unlawful. Yet no one would say that an attack on judicial sentencing proceedings following conviction may be raised through an action under § 1983. The inconsistency in the Court's treatment of sentencing proceedings and parole proceedings is thus difficult to justify. It is, furthermore, in tension with our precedents.

*Id.* at 88.

For the reasons discussed, this Court questions the propriety of granting Petitioner an opportunity to have his claim heard for a second time in this Court. Indeed, the very nature of habeas and its prohibition on second or successive petitions is designed to allow prisoners challenging the legality of their conviction or sentence just "one bite at the apple." However,

until this issue is resolved clearly, the Court will accept Petitioner's assertion the standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this § 2254 case and will consider the merits of Petitioner's claim.

### III. EXHAUSTION OF STATE COURT REMEDIES

Although Petitioner was able to proceed directly to this Court to bring his § 1983 claim, his current § 2254 petition requires exhaustion of state court remedies prior to bringing this action. Stated simply, this Court cannot grant Petitioner habeas corpus relief unless the Ohio Supreme Court first had an opportunity to rule on the federal claim he raises here. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (noting that "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts"). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c).

In his state court case, Petitioner asserted only alleged violations of state law. (Doc. 1-12, PAGEID #: 217–228); *Swihart*, 2014 WL 3740418, at *1. Because the state courts did not have an opportunity to resolve the federal constitutional claim Petitioner raises here, his claim does not warrant relief and is unexhausted. 28 U.S.C. § 2254(b), (c). Further, even if Petitioner had raised a federal due process claim that the Ohio Supreme Court had an opportunity to review, his *pro se* complaint in the Franklin County Court of Common Pleas challenged only his 1992, 2002, and 2005 Parole Board hearings, and did not raise a claim concerning his 2007 and 2012 Parole Board hearings. Indeed Petitioner could not have raised those claims in that action because the 2007 and 2012 Parole Board hearings occurred after he had filed the case. Thus, Petitioner could not have exhausted those claims. *But see supra* page 5 (concluding that Petitioner received meaningful consideration at his 2007 parole hearing) (citing *Swihart*, Case

11

No. 07 CVH 02-2229, Feb. 28, 2013 decision at 4–10). Based on the foregoing, Petitioner's claim is subject to dismissal as unexhausted.

Ordinarily, a habeas case that presents an unexhausted claim should be dismissed. However, "[w]here, 'the federal constitutional claim [is] plainly meritless and it would be a waste of time and judicial resources to require exhaustion,' exhaustion may be excused." *Scott Hansen v. Coleman*, No. 3:16-CV-2147, 2016 WL 5940922, at *4 (N.D. Ohio Oct. 13, 2016) (quoting *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)). Because Petitioner's claim plainly lacks merit, this Court will address the merits of Petitioner's claim.

## IV.   THE MERITS

Finally, Petitioner's claim fails on the merits. Petitioner asserts that the Parole Board deprived him of due process in several ways. First, he argues "that the ODRC and OAPA have repeatedly, arbitrarily and deliberately denied him meaningful consideration for parole, ignoring the sentence that [he] actually received—which made him eligible for parole after fifteen (15) years— and functionally imposing their own sentence of life without the possibility of parole." (Doc. 8 at 1). Second, Petitioner claims that OAPA improperly relied on false information, stating "it appears that the OAPA's determinations have been reliant on an entry in [his] file stating that his sentence was 'life without parole,' which—at best—the OAPA had reason to know was inaccurate." (*Id.*). Third, and finally, Petitioner contends that the OAPA's decisions have been improperly based on his "original sentence of death—which was later held unconstitutional, and therefore cannot be lawfully considered or 'deferred to' for any purpose." (*Id.* at 1–2).

### A.   Consideration of Petitioner's Sentence

Petitioner's first and third arguments go hand in hand, so the Court addresses them together. "Since Ohio has a discretionary parole system, there is no attendant due process right in the grant of parole, and the state's statutory and regulatory guidelines for parole, without

more, do not change this calculus." *Kinney v. Mohr*, No. 2:13-cv-1229, 2015 WL 1197812, at *4 (S.D. Ohio Mar. 16, 2015). Thus, while the Parole Board must afford an inmate meaningful consideration, it also maintains discretion to render its decision. *See Harris v. Wilson*, No. 1:06 CV 2342, 2006 WL 3803410, at *3 (N.D. Ohio Dec. 26, 2006).

Ohio Administrative Code 5120:1-1-07(A) states that the Parole Board may deny release if, *inter alia*:

> (1) There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under rule 5120:1-1-12 of the Administrative Code;
>
> (2) There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society.

*Id*. Further, Ohio Administrative Code 5120:1-1-07(B) sets forth factors the Parole Board considers when deciding whether to release an inmate. In addition to seventeen specific factors, the Parole Board also considers "[a]ny other factors which the board determines to be relevant, except for documents related to the filing of a grievance under rule 5120-9-31 of the Administrative Code." Ohio Admin. Code 5120:1-1-07(B)(18). However, Ohio Administrative Code 5120:1-1-07(C) does not require the decision to address expressly the factors.

Petitioner's arguments are not new. As set forth *supra*, Petitioner argued previously in this Court, the Sixth Circuit, the Franklin County Court of Common Pleas, and the Ohio Court of Appeals that he had been denied meaningful consideration because the Parole Board did not consider his actual sentence. *See, e.g.*, *Swihart*, 209 F. App'x at 457–58 (claiming a § 1983 violation because "the OAPA has expressed its intention never to grant him parole due to the fact he was originally sentenced to death"); *Swihart v. Chairman/Chairperson of the Ohio Adult*

*Parole Auth., et al.*, Case No. 07 CVH 02-2229) (asserting that Defendants had, in effect, unilaterally modified his sentence from 15 years-to-life to life without the possibility of parole by conducting "sham" parole hearings in which Defendants denied him meaningful consideration). However, Petitioner's claims failed based on the Parole Board's use of its discretion to consider the seriousness of the offense, along with all of the relevant factors. *See supra*.

Those decisions have support in the record. For instance, in *Swihart v. Chairman/Chairperson of the Ohio Adult Parole Auth., et al.*, Case No. 07 CVH 02-2229, Defendants relied on the affidavit of Chair of the Ohio Parole Board Cynthia Mausser. (Doc. 5-2, PAGEID #: 1411–14). In her affidavit, Ms. Mausser acknowledged that Petitioner became eligible for parole in 1992 and has remained eligible since. (*Id.*, PAGEID #: 1412). Further, Ms. Mausser's review of the record indicated that the mandatory factors in Ohio Administrative Code 5120:1-1-07(B) were considered at Petitioner's hearings and that the Parole Board's decisions were based on the serious nature of his offenses and the determination that he was not suitable for release. (*Id.*, PAGEID #: 1412–14). And even if, as Petitioner contends, the Parole Board considered his original sentence of death, doing so to consider the severity of the crime does not violate due process. (*See* Doc. 5-1, PAGEID #: 1014 in *Swihart v. Wilkinson*, No. 2:04-cv-00893 ("Due process does not forbid the board from considering the death penalty originally imposed. . . as a gauge to the serious nature of the offenses committed.")). Based on the foregoing, Petitioner's first and third arguments fail.

### B. Information Relied Upon

Next, Petitioner claims the Parole Board denied him due process based upon its reliance on false information; specifically, that he had been sentenced to life without the possibility of parole. Although a Parole Board's reliance on false information may constitute a due process

14

violation, *see Jergens v. Ohio Dep't of Rehab. and Corr. Adult Parole Auth.*, 492 F. App'x 567, 571 n.5 (6th Cir. 2012), there is no such violation here.

As noted above, every Court to consider the issue has found Petitioner's claim is without merit because the Parole Board acted within its discretion. Irrespective of those decisions, Petitioner's claim that false information was the reason for the Parole Board's decisions is contrary to the record. Ms. Mausser's affidavit reiterates the reasons for those decisions, and her statements are consistent with the decisions in the record. (*See, e.g.*, Doc. 5-1, PAGEID #: 872 (finding that Petitioner was unsuitable for parole due to the serious nature of the crime); *id.*, PAGEID #: 886 (continuing Petitioner into his guideline range of 300 months-life, based on his offense behavior involving the death of his mother, father, and two brothers, and in deference to the court's original sentence of death); *id.*, PAGEID #: 251 (denying parole based on the severity of the crime); Doc. 5-3, PAGEID #: 1821–23 (same); *id.*, PAGEID #: 1891 (same)).

Stated simply, this Court disagrees with Petitioner's contention that the Parole Board made its decisions based on a mistaken belief that he was ineligible. To the contrary, the record reveals that the Parole Board was aware of his eligibility, but found him unsuitable based on the severity of his crime. It was within the Parole Board's discretion to make that determination, and Petitioner's due process claim fails.

"Due process in parole proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be heard, and, if parole is denied, the parole board informs the inmate of the basis upon which it denied parole." *Swihart*, 209 F. App'x at 459 (citing *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1, 16 (1979)). Here, due process has been satisfied, and Petitioner's claim is without merit.

## V. MOTION FOR DISCOVERY AND EVIDENTIARY HEARING

Additionally, Petitioner has filed a Motion for Discovery pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts. (Doc. 9). Specifically, Petitioner seeks discovery to support his argument that the Parole Board relied on false information in his file. (*Id*. at 4–5). For the reasons set forth above, the Court finds Petitioner's claim to be without merit. Thus, the Motion for Discovery is **DENIED**. (*Id*.).

Petitioner also requests an evidentiary hearing. (*Id*. at 1). An evidentiary hearing is not required where it would be futile or where, as here, the record is complete and no fact that could be developed would result in the granting of the writ. *Mack v. Bradshaw*, No. 1:04CV829, 2010 WL 1416703, at *1 (N.D. Ohio Mar. 31, 2010). Therefore, Petitioner's request for an evidentiary hearing also is **DENIED**. (Doc. 9 at 1).

## VI. RECOMMENDED DISPOSITION

Based upon the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing and Motion for Discovery are **DENIED**. (Doc. 9).

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.


Date: March 7, 2017                              /s/ Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE